**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**KVP SUTHERLAND PAPER COMPANY, SUTHERLAND DIVISION, Respondent.**

**No. 16073.**

United States Court of Appeals
Sixth Circuit.

Feb. 15, 1966.

Jules H. Gordon, Atty., National Labor Relations Board, Washington, D. C., for petitioner, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Allison W. Brown, Jr., Atty., National Labor Relations Board, Washington, D. C., on the brief.

Earle K. Shawe and William J. Rosenthal, Baltimore, Md., for respondent, Larry M. Wolf, Baltimore, Md., on the brief.

Before EDWARDS, Circuit Judge, CECIL, Senior Circuit Judge, and BROWN, District Judge.*

EDWARDS, Circuit Judge.

The National Labor Relations Board seeks enforcement by this court of its order directing the respondent, a major paper and cardboard box manufacturer, to accept the Board's determination of a bargaining unit (which the NLRB terms a lithographic process unit) and to bargain with the Lithographers' Union [1] for approximately 100 employees.

The record before us shows that the Sutherland Paper Company, now a division of KVP Sutherland Paper Company, has had collective bargaining relations with an industrial union, the Paperworkers Union of the AFL–CIO [2] since 1937 for over 2,000 employees.[2]

The Board's petition for enforcement follows several extended Board hearings and procedures. The lengthy administrative process began under Section 9(c) of the National Labor Relations Act, with a petition filed in 1958 by the Lithographers for the definition of an appropriate bargaining unit and certification. After a definition of a unit by the Board, there was an election in 1959

---

* Honorable Bailey Brown, United States District Judge for the Western District of Tennessee, sitting by designation.

1. Amalgamated Lithographers of America.

2. United Papermakers and Paperworkers, AFL–CIO.

which the Lithographers lost. Subsequently in 1960, the Lithographers petitioned for certification again and again the Board ordered an election in the unit previously defined. The election occurred February 9, 1961, and resulted (after lengthy hearings both as to the appropriate unit and challenges as to ballots cast) in certification of the Lithographers by the NLRB as exclusive bargaining representatives for "the lithographic production employees."

After certification and refusal of Sutherland to bargain with the Lithographers, an unfair labor practice charge was filed under Section 8(a) (1) and 8(a) (5).

The order which the Board is seeking to enforce before us resulted from the unfair labor practice charge. As to this charge the Board employed a seldom (respondent says never before) used procedure for summary judgment, and it did so without any hearing of evidence. The Trial Examiner's order granting the General Counsel's motion for summary judgment was dated October 18, 1962. The Board finally affirmed by supplemental order dated May 12, 1964 (reaffirming a prior order of July 24, 1963).

Before us two questions were briefed and argued. The first: On the whole record, is there substantial evidence to support the findings of fact and conclusions of law of the Board?

And the second: Was the Board justified in entering summary judgment rather than acceding to respondent and respondent's intervening union's request for oral hearing?

This "craft"[3] versus industrial union argument is historic in labor-management relations in some of our major industries, and has provoked some of the major difficulties of the Board in the area of determination of appropriate bargaining units.

The NLRB's contentions are simple to state. They are, first, that whether right or wrong in its determination of the appropriate bargaining unit involved here, the NLRB acted within its statutory discretion, and there is substantial evidence to support its findings of fact and conclusions.

Secondly, the Board argues that its final order was justified, even though made without hearing, because it is based on acceptance of the respondent paper company's offer to prove made before the Trial Examiner.

Respondent's arguments are not quite so simple to state. They start with the proposition that their company is an integrated company in an integrated industry, and that it should be given similar treatment to that accorded the four integrated industries in relation to which the Board has historically held it would not allow for any craft bargaining units. See, National Tube Company, 76 N.L.R.B. 1199 (1948).

Next, the company says that even if it is not entitled to such a blanket exemption from craft unionism as would be presupposed by the holding above, that it still is, under the Board's own rulings, improperly deprived of an appropriate bargaining unit determination because there is in fact an intermixture of personnel between the letterpress operations and the lithographic operations, and a process of change of employees from one to the other which approximates the situation with which the NLRB dealt in Pacific Press, Inc., 66 N.L.R.B. 458 (1946), where the NLRB denied a lithographic unit.

Finally, respondent asserts that if this was not the factual situation at the time of the Board's first determination of appropriateness of the lithographic unit, it certainly was by the time of the recommended order of 1962. The company argues that by then its own integration of the lithographic process with all of its other processes was even more complete; that it had completed a training program so that printing pressmen were capable of going to work on lithographic presses and vice versa, and all pressmen were

3. Strictly speaking, the disputed bargaining unit is not a craft unit, since it includes unskilled production employees who work on the lithographic process.

used interchangeably; that the lithographic presses are now no longer housed in one building; and that the trend in the industry is toward such a merger of the processes of lithography and printing as to make it certain that the technological changes in the industry will do away with any possible appropriateness this bargaining unit may ever have had. And, of course, respondent contends that a hearing would have established all this conclusively.

Thus this appeal raises all the important issues of fact and law dealt with in N.L.R.B. v. Pittsburgh Plate Glass Co., 270 F.2d 167 (C.A. 4, 1959), cert. denied, 361 U.S. 943, 80 S.Ct. 407, 4 L.Ed.2d 363 (1960); N.L.R.B. v. Weyerhaeuser Co., 276 F.2d 865 (C.A. 7, 1960), cert. denied, 364 U.S. 879, 81 S.Ct. 168, 5 L.Ed.2d 102 (1960); Pacific Press, Inc., supra, and Pacific Coast Assn., Pulp and Paper Manufacturers, 130 N.L.R.B. 1031 (1961).

Before we reach these matters, however, we are confronted by a procedural problem of substance likewise. As we have noted, the NLRB order as to which enforcement is sought was entered as a summary judgment and without hearing.

Originally the NLRB in this unfair labor practice complaint approved its Trial Examiner's recommendations and order following a summary proceeding, without apparent concern about the lack of hearing.

Subsequently, it reconsidered its own order, and taking into account the lengthy offer to prove tendered by KVP Sutherland, it entered a lengthy opinion and order affirming the Trial Examiner all over again. The opinion itself leaves us in some doubt about the "summary" character of this proceeding. For it seeks to meet and argue each factual assertion of KVP Sutherland. Normally such confrontation of fact and inference is (at least in the first instance) the function of direct testimony and cross-examination.

The NLRB has generally employed summary proceedings only in situations where a party has defaulted. As is obvious, no such situation is present here.

Perhaps even more to the point, the National Labor Relations Act (let alone due process!) squarely provides for hearings:

"Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board, or any agent or agency designated by the Board for such purposes, shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the Board or a member thereof, or before a designated agent or agency, at a place therein fixed, * * *. The person so complained of shall have the right to file an answer to the original or amended complaint and to appear in person or otherwise and give testimony at the place and time fixed in the complaint. In the discretion of the member, agent, or agency conducting the hearing or the Board, any other person may be allowed to intervene in the said proceeding and to present testimony." National Labor Relations Act § 10 (b), 61 Stat. 146–7 (1947), 29 U.S.C. § 160(b) (1964).

There is still another argument for reversal for hearing. The NLRB, through its Trial Examiner, granted a motion to intervene filed by the United Papermakers and Paperworkers, AFL–CIO. The intervenor (which obviously had a major stake in the outcome of this proceeding) also sought a hearing so as to be allowed to participate in its own behalf. See International Union United Automobile, etc., Local 283 v. Scofield; International Union United Automobile, etc., Local 133 v. Fafnir Bearing Co., 86 S.Ct. 373 (Dec. 7, 1965). It has never been allowed to do so. It too claims a denial of due process.

The Board has relied primarily upon Pittsburgh Plate Glass Co. v. N.L.R.B.,

313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251 (1941) in denying a hearing in this unfair labor practice complaint proceeding. See also N.L.R.B. v. West Kentucky Coal Co., 152 F.2d 198 (C.A. 6, 1945), cert. denied, 328 U.S. 866, 66 S.Ct. 1372, 90 L.Ed. 1636 (1946). We believe such reliance is mistaken. The *Pittsburgh Plate Glass* case did not affirm a summary judgment. The record clearly discloses that there was an adversary hearing preceding the Board's order in the unfair labor practice case. The issues in *Pittsburgh* pertained largely to exclusion of certain evidence at this hearing which would have had the effect of seeking to relitigate certain matters previously litigated to conclusion in other proceedings.

It is true that in upholding the exclusion of certain evidence the court did say: "The unit proceeding and this complaint on unfair labor practices are really one." Pittsburgh Plate Glass Co. v. N.L.R.B., supra, 313 U.S. at 158, 61 S.Ct. at 915. (Footnote omitted.)

But what it appears to us was intended thereby was that the NLRB could take full account of all evidence previously heard in the "appropriate unit" proceedings and rely upon decision of all issues finally resolved therein.

The problem in our instant case is not the same. Here there was no hearing at all on the unfair labor practice charge. Respondent KVP Sutherland asserts that material changes in its assignment practices and technology occurring since the certification hearings have fully integrated its lithographic and letterpress operations.

It is clear that under the Board's own holdings such a change of circumstance (if established) would render the defined bargaining unit inappropriate. Pacific Press, Inc., supra; Pacific Coast Assn., Pulp and Paper Manufacturers, supra; N.L.R.B. v. Weyerhaeuser Co., supra; N.L.R.B. v. Dewey Portland Cement Co., 336 F.2d 117 (C.A. 10, 1964).

We are by no means unimpressed by petitioner's argument that litigation must have an end somewhere and that this case has already produced great delay. But a year of the delay was obviously occasioned by the NLRB's own uncertainty about the legality of the summary procedures employed prior to its supplemental order. The hearing sought could easily have been held in much less time. It is also worthy of note that this case does not represent the customary foot dragging of an employer seeking to avoid collective bargaining. For KVP Sutherland and its present bargaining agent, United Papermakers and Paperworkers, AFL–CIO, the carving out of a smaller bargaining unit constitutes an issue of obvious concern. And KVP Sutherland under the NLRA had no way to secure judicial review of the NLRB's decision pertaining to establishment of the lithographic production bargaining unit absent an order resulting from an unfair labor practice charge. A. F. of L. v. N.L.R.B., 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (1940).

We do not think it appropriate to seek to reach a final determination of this controversy without the benefit of an adversary proceeding where all the facts have been developed. As we read this record there are issues of fact to be decided pertaining to developments since the certification hearings. (Cf. Rule 56 Fed.R.Civ.P.)

In the interest of as prompt an end to this lengthy dispute as is consistent with due process, this court will waive its rules in order to allow presentation of any future petition concerning this same dispute on the present briefs and appendices, plus typewritten or mimeographed supplemental briefs and appendices. Further, the court will look favorably on a motion to advance such a case on the court's hearing docket.

The case is remanded to the NLRB with instructions to grant a hearing on respondent company's defenses to the unfair labor practice charge, limited to facts not available at the time of the certification hearings.

Enforcement of the Board order is denied.