**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**v.**

**CLEMENT–BLYTHE COMPANIES, a joint venture, Respondent.**

**No. 13058.**

United States Court of Appeals Fourth Circuit.

Argued June 13, 1969.

Decided Sept. 9, 1969.

Michael F. Rosenblum, Atty., N. L. R. B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. General Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and William F. Wachter, Atty., N. L. R. B., on brief), for petitioner.

Harry L. Griffin, Jr., Atlanta, Ga. (Smith, Currie & Hancock, Atlanta, Ga., on brief), for respondent.

Before BRYAN, CRAVEN and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

The National Labor Relations Board petitions for enforcement of an order requiring Clement-Blythe Companies to bargain collectively with the International Union of Operating Engineers, AFL–CIO Local No. 74.[1] We decline to enforce the order because the Board has failed to set forth reasons for its decision.

Clement-Blythe Companies, a joint venture, began construction of Keowee-Toxaway Dam in South Carolina on March 6, 1967. A month later the union filed a petition for certification. At a representation hearing conducted April 28, 1967, Clement-Blythe moved to dismiss the petition on the ground that an election would be premature because the work force constituted an expanding unit without a substantial and representative complement of employees.[2]

---

1. Clement-Blythe Companies, 168 NLRB No. 24, 66 LRRM 1342 (1967).

2. For expanding units the Board has adopted a decisional rule that an election will be directed if the present employees constitute a substantial and representative segment of the ultimate work force. See, e. g. General Cable Corp., 173 NLRB No. 42, 69 LRRM 1318

The evidence at the hearing was uncontradicted. The only witness was the project manager who testified that 37 production and maintenance employees were then employed. He anticipated 60 production and maintenance employees at the end of May, 80 at the end of June, 90 at the end of July, 110 at the end of August, 125 at the end of September, 140 at the end of February 1968, and between 180 and 190 from April 1969 until the completion of the work.

■ The Regional Director ordered an election to be held on June 15, 1967, and the Board denied Clement-Blythe's request for review. Of the 40 employees eligible to participate in the election, 31 voted for the union. Clement-Blythe, still insisting that the electorate was not a representative and substantial segment of the contemplated work force, refused to bargain with the union. Consequently, the general counsel issued a complaint charging Clement-Blythe with violations of § 8(a) (5) and (1) of the Labor Act [29 U.S.C. § 158(a) (5) and (1)]. The general counsel then filed a motion for summary judgment with the Board. Clement-Blythe opposed this motion contending that it was entitled to a hearing at which it could prove that it had 100 employees as of August 28, 1967, and that its work classifications were double the number existing at the time of the representation hearing. The

Board ruled that Clement-Blythe's tender of proof did not present newly discovered or previously unavailable evidence. The Board fully stated its reasons for its ruling on this issue, and we find no procedural defect in the denial of a *de novo* hearing.

The Board held that Clement-Blythe could not relitigate issues decided in the representation proceedings and granted the motion for summary judgment.[3] In its decision and order, the Board recited the facts developed at the representation hearing and concluded that the employer's refusal to bargain was an unfair labor practice. The crucial paragraph of the Board's decision is:

"As all material issues have been previously decided by the Board, admitted by Respondent's answers to the complaint and amendment thereto, or stand admitted by the failure of Respondent to controvert the averments of the General Counsel's motion, there are no matters requiring a hearing before a Trial Examiner. Accordingly, the General Counsel's Motion for Summary Judgment is hereby granted." [4]

■ We previously have upheld the Board's use of summary judgment when the basis for the employer's refusal to bargain was the same that was litigated in the underlying representation hearing.[5] We do not condemn this prac-

(1968) ; Revere Copper and Brass, Inc., 172 NLRB No. 117, 68 LRRM 1425 (1968) ; Gen. Mot. Corp., Electro-Motive Div., 82 NLRB 876, 23 LRRM 1651 (1949). Clement-Blythe does not contend this rule is improper.

3. The Board's rules provide, 29 CFR 102.-67(f) :

"The parties may, at any time, waive their right to request review [of the Regional Director's decision]. Failure to request review shall preclude such parties from relitigating, in any related subsequent unfair labor practice proceeding, any issue which was, or could have been, raised in the representation proceeding. Denial of a request for review shall constitute an affirmance of

the regional director's action which shall also preclude relitigating any such issues in any related subsequent unfair labor practice proceeding."

4. Although Clement-Blythe admitted its refusal to bargain, it continuously asserted that the representation election "did not reflect the interest and choice of a substantial and representative complement of [its] ultimate work force."

5. NLRB v. Union Bros., Inc., 403 F.2d 883, 887 (4th Cir. 1968) ; NLRB v. Aerovox Corp., 390 F.2d 653 (4th Cir. 1968) ; LTV Electrosystems v. NLRB, 388 F.2d 683 (4th Cir. 1968) ; NLRB v. Carolina Natural Gas Corp., 386 F.2d 571 (4th Cir. 1967) ; accord, NLRB v. Puritan Sportswear Corp., 385 F.2d 142 (3d Cir.

tice now. But the use of summary judgment in deciding whether an employer has committed an unfair labor practice does not exempt the Board from complying with the Administrative Procedure Act [5 U.S.C. § 557(c)], which requires that:

"All decisions, including initial, recommended, and tentative decisions, are a part of the record and shall include a statement of—

"(A) findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record * * *."

■ The defects in the procedure followed in this case are readily apparent. Nowhere did the Board explain why it reached the decision that 40 employees constituted a substantial segment of the ultimate work force of 180 to 190 employees. Nor did it explain why it approved an election on June 15, 1967 instead of 90 days later when the work force would have nearly tripled. The Board's earlier consideration of Clement-Blythe's request for review of the Regional Director's decision does not supply the deficiency, for then the Board simply denied the request with the observation that it raised no substantial issues warranting review.[6]

■ When the Board rules that an employer has committed an unfair labor practice, the employer is entitled to

know, and the Board is charged with the duty of stating, the reasons why the Board concluded the facts showed a violation of the law. Cf. Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 195, 61 S. Ct. 845, 85 L.Ed. 1271 (1941); 2 Davis, Administrative Law § 16.12 (1958). No statutory exception to this rule exists because critical elements of the controversy were determined preliminarily by the Regional Director in the representation proceedings. The Board, not the Regional Director, has the responsibility of deciding complaints of unfair labor practice. 29 U.S.C. § 160(c).

■ The need for the Board to provide its reasons is based on something more than insistence on technical compliance with the Administrative Procedure Act [5 U.S.C. § 557(c)]. Counsel for the Board cited cases in which under comparable facts an election was ordered.[7] Clement-Blythe countered with substantially similar cases in which the Board held the petition for election was premature.[8] Because the Board did not state its reasons here, it is difficult to say whether its order is rational or arbitrary. But, "[c]ourts ought not to have to speculate as to the basis for an administrative agency's conclusion." Northeast Airlines, Inc. v. CAB, 331 F. 2d 579, 586 (1st Cir. 1964). Although the ruling in the representation hearing is not subject to direct review, it may be challenged when it becomes the basis of an unfair labor practice complaint.

1967); NLRB v. Tennessee Packers, Inc., 379 F.2d 172 (6th Cir.), *cert. denied*, 389 U.S. 958, 88 S.Ct. 338, 19 L.Ed.2d 364 (1967); Macomb Pottery Co. v. NLRB, 376 F.2d 450 (7th Cir. 1967); Neuhoff Bros. Packers, Inc. v. NLRB, 362 F.2d 611 (5th Cir. 1966), *cert. denied*, 386 U.S. 956, 87 S.Ct. 1027, 18 L.Ed.2d 106 (1967).

6. We do not reach the question of whether the Board could discharge its duty by adopting the reasons supplied by the Regional Director. In this case the Regional Director gave no reasons. The crux of his opinion is the conclusory statement that Clement-Blythe's operations are "sufficiently established and stabilized and

that they are manned by a substantial and representative segment of the Employer's ultimate working complement."

7. General Cable Corp., 173 NLRB No. 42, 69 LRRM 1318 (1968); Revere Copper & Brass, Inc., 172 NLRB No. 117, 68 LRRM 1425 (1968); Kermac Nuclear Fuels Corp., 122 NLRB 1512, 43 LRRM 1330 (1959); Brown & Root Carbide, Inc., 119 NLRB 815, 41 LRRM 1204 (1957); Gen. Mot. Corp., Electro-Motive Div., 82 NLRB 876, 23 LRRM 1651 (1949).

8. Slater Systems Maryland, Inc., 134 NLRB 865, 49 LRRM 1294 (1961); Individual Drinking Cup Co., Inc., 101 NLRB 1751, 31 LRRM 1287 (1952).

American Federation of Labor v. NLRB, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (1940). Then the reasons for the Board's decision become essential, for lack of clarity in the administrative process infects review with guesswork. See Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 197, 61 S.Ct. 845, 85 L.Ed. 1271 (1941).

Three precautionary observations are appropriate so that this opinion will not be given a scope broader than its due:

■■ First, the Board need not give its reasons in representation proceedings. Congress recognized the necessity of avoiding delay at this stage of labor-management relations and authorized the Board to delegate its power in representation cases to Regional Directors. 29 U.S.C. § 153(b). The Administrative Procedure Act excludes from its requirements "the certification of worker representatives." 5 U.S.C. § 554(a) (6). This exclusion applies not only to the proceedings before the Regional Director, but also to the Board's grant or denial of review of the Regional Director's decision. This, too, is part of the certification process. Only when the issues concerning representation become entwined in a subsequent unfair labor case must the Board comply with the Administrative Procedure Act, [5 U.S.C. § 557(c)], and state reasons for its decision.

■ Second, the Board need not conduct a *de novo* hearing in every unfair labor practice case. Pittsburgh Plate Glass Co. v. NLRB, 313 U.S. 146, 161, 61 S.Ct. 908, 85 L.Ed. 1251 (1941); NLRB v. Union Bros., Inc., 403 F.2d 883 (4th Cir. 1968); NLRB v. Bata Shoe Co., 377 F.2d 821 (4th Cir.), *cert. denied*, 389 U.S. 917, 88 S.Ct. 238, 19 L.Ed.2d 265 (1967). But in the absence of a *de novo* hearing, the Board must thoroughly review the record before the Regional Director and make its own decision. Pepsi-Cola Buffalo Bottling Corp. v. NLRB, 409 F.2d 676, 681 (2d Cir. 1969).

■ Third, our opinion does not prohibit the Board from deciding unfair la-

bor practice cases on motions for summary judgment. We do require, however, that in granting a motion for summary judgment the Board explain why the facts found at the representation hearing sustain the complaint of an unfair labor practice.

The petition for enforcement is denied, and this case is remanded to the Board for further proceedings.