Henry S. **HOOD**, Jr., Appellant,

v.

Jesse **BROWN**, Secretary of Veterans Affairs, Appellee.

No. 91–714.

United States Court of Veterans Appeals.

March 2, 1993.

Henry S. Hood, Jr., pro se.

James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, and John D. Lindsay, Jr. were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and KRAMER and IVERS, Associate Judges.

NEBEKER, Chief Judge:

This appeal presents for review a January 3, 1991, Board of Veterans' Appeals (BVA or Board) decision which denied appellant an increased rating to 100% for his manic-depressive psychosis, currently rated as 30% disabling. Upon consideration of the pleadings and the record on appeal, the Court concludes that the Board's statement of reasons or bases for continuing, rather than increasing, appellant's 30% disability rating was inadequate, and that the Board failed to consider appellant for individual unemployability under 38 U.S.C.A. § 1521 (West 1991). The Board's decision is vacated, and the case is remanded for further proceedings.

Appellant served in the armed services from August 1951 to March 1952. From 1978 to 1989, he was rated as 10% disabled for his service-connected manic depressive psychosis (bipolar disorder). In 1989, he applied for an increase and submitted a hospital report which showed that he was hospitalized from April 6 through April 20, 1989, for treatment for "bipolar disorder, mixed in acute exacerbation." R. at 20. The report noted that appellant was receiving supplemental security income and worked as a salesman on weekends for a patio company. *Id.* The Regional Office (RO) denied an increase. R. at 23. He subsequently appealed that decision and requested a Department of Veterans Affairs (formerly Veterans' Administration) (VA) psychiatric examination. The VA examiner, Dr. O. Aniline, diagnosed appellant with a major psychiatric condition "consistent with manic depressive illness" and noted that appellant is "not able to work or maintain any kind of part-time work." R. at 35–36. Based on Dr. Aniline's examination and the 1989 hospitalization report, the RO increased appellant's rating to 30%. He appealed that decision to the Board.

The Board took note of the hospital report and the VA examination and concluded, despite Dr. Aniline's statement that appellant was unable to work, that he "can function normally at times." *Henry S. Hood, Jr.,* BVA 91–00373, at 4 (Jan. 3, 1991) [hereinafter BVA decision].

In *Gilbert v. Derwinski,* 1 Vet.App. 49 (1990), the Court held that 38 U.S.C.A. § 7104(d)(1) (West 1991) requires that

the BVA articulate with reasonable clarity its "reasons or bases" for decisions, and in order to facilitate effective judicial review, the Board must identify those findings it deems crucial to its decision and account for the evidence which it finds to be persuasive or unpersuasive.

*Gilbert,* 1 Vet.App. at 57. The Board is obligated to "explain, in the context of the facts presented, the rating criteria used in determining the category into which the veteran's symptoms fall." *Shoemaker v. Derwinski,* 3 Vet.App. 248, 253 (1992). *See* 5 U.S.C.A. § 557 (West 1991); *Intern. Longshoremen's Ass'n v. National Mediation,* 870 F.2d 733 (D.C.Cir.1989) (Board must articulate reasons for decisions in a way to enable reviewing court to discern basis for Board's actions); *N.L.R.B. v. Clement–Blythe Companies,* 415 F.2d 78 (4th Cir.1969) (Board charged with duty of stating reasons for conclusions). Here, the Board did not provide reasons or bases to explain why appellant's impairment is "definite" and not "considerable," "severe," or "total," *see* 38 C.F.R. § 4.132 (1992); it simply concluded that "the current rating, which contemplates definite social and industrial impairment, is seen as adequately encompassing the symptomatology displayed." BVA decision at 4. Accordingly, the case must be remanded for the Board to explain why appellant's symptoms do not fit the criteria for a higher rating. *See Jones v. Principi,* 3 Vet.App. 396, 399 (1992).

We note, however, that the nature of the governing regulation might make it difficult for the Board to supply such a statement. Section 4.132 provides the following rating descriptions:

100% rating: Active psychotic manifestations of such extent, severity, depth, persistence or bizarreness as to produce *total* social and industrial inadaptability.

70% rating: With lesser symptomatology such as to produce *severe* impairment of social and industrial adaptability.

50% rating: *Considerable* impairment of social and industrial adaptability.

30% rating: *Definite* impairment of social and industrial adaptability.

10% rating: *Mild* impairment of social and industrial adaptability.

0% rating: Psychosis in full remission.

38 C.F.R. § 4.132, schedule 9210, (1992) (emphasis added).

The terms "total", "severe", "considerable", and "mild" are all quantitative in nature; they describe the degree to which a veteran's psychotic disorder affects social and industrial adaptability. These terms are in keeping with the general policy of the rating schedule:

> The percentage ratings represent as far as can practicably be determined *the average impairment in earning capacity* resulting from such diseases and injuries and their residual conditions in civil occupations.

38 C.F.R. § 4.1 (1992) (emphasis added). The term "definite", on the other hand, is qualitative in nature. To say that a veteran has "definite" impairment of social and industrial adaptability is to say that the veteran is unmistakably impaired. It does not describe the degree of the impairment as the other quantitative terms do. For example, a veteran who is "mildly" or "totally" impaired is also "definitely" impaired, because the characteristics which constitute a psychotic disorder are, without doubt, present.

At the Court's request, the Secretary filed a supplemental memorandum on this issue. The Secretary responded, noting that no department directive exists on how the terms are applied, that "the use of 'definite' for a 30–percent rating *implies* a degree of impairment of social and industrial adaptability approximately midway between 'mild' and 'considerable' impairment, the criteria for 10–percent and 50–percent ratings, respectively." Supp.Br. of Appellee at 11 (emphasis added).

Since the Secretary's General Counsel has been unable to offer any way to articu-late a reasoned basis for describing a "definite" impairment other than midway between "considerable" and "mild," it is unlikely that the Board will find it easy to supply reasons or bases. Both "considerable" and "mild" quantify degrees of impairment. "Considerable" means "rather large in extent or degree." *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1986). "Mild" means "moderate in action or sensuous effect." *Id.* "Definite," according to WEBSTER'S, is, for our purposes, incapable of a middle ground between the two, unless as Humpty Dumpty declared, "When I use a word, it means just what I choose it to mean—neither more nor less." LEWIS CARROLL, THROUGH THE LOOKING GLASS (1865). WEBSTER'S, *supra*, defines "definite" as "real, actual" or "marked by absence of the ... doubtful." Listed as a synonym is "explicit", which in turn is defined as "externally visible: clearly observable." None of the meanings of "definite" or its synonym "explicit" connotes a quantifiable degree. *Cf. Rowland v. California Men's Advisory Council,* —— U.S. ——, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993) (Dictionary Act, 1 U.S.C.A. § 1 (West 1991), requires application of ordinary meaning).

Accordingly, we are unable to accept the Secretary's argument that the statutory "reasons or bases" requirement of section 7104(d)(1) can be met by the *ipse dixit* that "definite" describes an unarticulated degree of impairment lying somewhere between "mild" and "considerable." To put it another way, the Board could hardly comply with the reasons or bases requirement by simply stating that the degree of impairment lies at the midpoint between 50% and 10%. That is the ultimate conclusion and must be justified by a clear statement of reasons or bases and not by the equivalent of "because I say so."

Although the term "definite" may have been intended to describe a condition that is more than "mild," but less than "considerable," we observe that the Board, rather than the General Counsel, should be given an opportunity to provide reasons or bases for its decision. In doing so, the Board is

free to construe the term "definite" in section 4.132 in a way that quantifies the degree of impairment and not the mere fact that impairment exists.

In his memorandum, the Secretary points out that 38 U.S.C. § 7252(b) (West 1991) provides:

> Review in the Court shall be on the record of proceedings before the Secretary and the Board. The extent of the review shall be limited to the scope provided in section 7261 of this title. The Court may not review the schedule of ratings for disabilities adopted under section 1155 of this title or any action of the Secretary in adopting or revising that schedule.

We are not, however, reviewing the "schedule of ratings." Obviously, the statute forbids the Court from deciding, for example, that "severe" social and industrial inadaptability should be given only a 50% rating. The Court does, however, have jurisdiction to review whether the Secretary has acted in accordance with procedure required by law. 38 U.S.C.A. § 7261 (West 1991). The Board is statutorily mandated to provide a statement of reasons or bases for its decision. If the Board is unable to do so because of a regulation's syntax, then it may be necessary for the Secretary to change that regulation by amendment or interpretation. The Court is not reviewing the schedule of percentage ratings or the percentages prescribed by that schedule, but requiring that the terms used in describing each rating be capable of validation, as required by section 7104(d)(1), supra.

■ The Court further finds error in the Board's failure to consider appellant for individual unemployability under 38 U.S.C.A. § 1521, given a doctor's observation in the record that appellant was "not able to work or maintain any kind of part-time work." R. at 36. *See E.F. v. Derwinski*, 1 Vet.App. 324, 326 (1991) (duty to assist extends liberal reading to include issues raised in all documents submitted prior to the BVA decision); *see also* 38 C.F.R. § 4.16(a) and (b).

Accordingly, the Court retains jurisdiction, vacates the Board's decision, and remands the case for the Board to provide a statement of reasons and bases, to detail how the term "definite" can be applied in a quantitative manner, and to apply 38 U.S.C.A. § 1521.