**Eldson J. McGHEE, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 91–1595.

United States Court of Veterans Appeals.

Aug. 25, 1993.

Eldson J. McGhee, pro se.

James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Carolyn F. Washington, for appellee.

Before NEBEKER, Chief Judge, and MANKIN and HOLDAWAY, Judges.

MANKIN, Judge:

Appellant appeals an August 15, 1991, decision of the Board of Veterans' Appeals (BVA or Board) which denied entitlement to an effective date earlier than July 25, 1984, for service connection for post-traumatic stress disorder (PTSD) and for entitlement to a retroactive rating higher than 30% for PTSD. The Secretary of Veterans Affairs has submitted a motion for summary affirmance. The Court has jurisdiction over the case pursuant to 38 U.S.C.A. § 7252(a) (West 1991).

## I. FACTS

Appellant served on active duty from May 1967 to May 1969. In March 1968, he was wounded during combat in Vietnam, sustaining superficial shrapnel wounds to the head, face, and left hand. R. at 52. Appellant was not hospitalized, but he was treated at an aid station and returned to duty. Shortly thereafter, he developed "combat fatigue" and was evacuated from the combat zone. He was reassigned to work as a dispatcher and finished his tour of duty without further difficulties. Appellant's separation examination does not reveal any psychological or neurological problems, although the examining physi-

cian noted that appellant had suffered occasional pressure in the chest accompanied by anxiety. R. at 26–31. A Veterans' Administration (now Department of Veterans Affairs) (VA) physical examination request form from March 1970 lists "nervous condition," along with appellant's physical injuries, as a service-connected disability (R. at 43), although the record indicates that appellant was not service connected for this condition until February 1985. R. at 108.

In December 1971, appellant submitted to a VA neuropsychiatric examination. The evaluation report, prepared by C. Joel, M.D., indicated that appellant had been unemployed since July 1970, except for some part-time janitorial work. Dr. Joel observed that appellant did not seem to be particularly anxious, tense, or depressed. The doctor did note a history of acute situational anxiety reaction due to appellant's combat experiences; however, he stated that the symptoms had subsided. No neurological or psychiatric problems were detected. R. at 53. In January 1972, the Regional Office (RO) denied service connection for a nervous condition. The RO concluded that, although there was a record of in-service treatment of a nervous condition, no abnormality was found during the December 1971 VA examination. R. at 58, 60. Service connection was again denied by a December 1978 rating decision on the grounds that appellant did not submit new and material evidence to warrant reopening of his claim. R. at 75.

In April 1990, appellant submitted an application for compensation or pension for a nervous condition, in addition to other disabilities. R. at 78–81. He also submitted VA medical records showing hospital admission in September 1984 for alcohol and drug dependency, and PTSD. R. at 87. The records reveal complaints of "head problems" and nightmares. The diagnosis was intoxication and substance abuse. R. at 94. Upon discharge, four days after admission, appellant was considered to be competent and able to work. R. at 89. In October 1984, appellant submitted a statement in support of his claim for service connection for PTSD and a total disability

rating, in which he stated that he experienced nightmares, flashbacks, temper tantrums, fits of depression, and paranoia. He also claimed that he had lost his sex drive and had experienced increased feelings of detachment. R. at 95. Appellant submitted a letter from W. Kingsley Weatherly, M.D., a VA staff psychiatrist, who stated that appellant should be evaluated for PTSD. R. at 97. Appellant also submitted an account of stressors which he was exposed to during service in Vietnam. R. at 100. In December 1984, appellant was examined by Jack R. Jarvis, M.D., at a VA medical facility. After examining appellant and reviewing his claims file, the doctor rendered a diagnosis of PTSD. R. at 106. By a rating decision dated February 19, 1985, appellant was service connected for PTSD and rated as 30% disabled. R. at 108. Subsequently, appellant's service representative filed a Notice of Disagreement with the decision, asserting that the 30% evaluation was not adequate, considering the severity of appellant's condition. R. at 110. A confirmed rating decision was issued on March 28, 1985. R. at 115.

In March 1985, appellant was admitted to a VA facility for treatment of nightmares, depression, and stress. R. at 117. The examining physician's assessment was that appellant suffered "substance, drug and alcohol abuse, and [PTSD] with depression and social dysfunction." The examiner also stated that appellant was competent, able to work, and had no limitations on his physical activity. R. at 118. Appellant was awarded a 100% evaluation due to hospitalization from March 9, 1985, until May 1, 1985, at which time his 30% rating was restored. R. at 121.

In October 1989, the VA referred appellant for psychological testing at the United States Penitentiary, Leavenworth, Kansas, where he was incarcerated. Glenn D. Walters, Ph.D., reported a diagnosis of PTSD. Dr. Walters observed that "appellant appears to function better in prison than in the community." R. at 142. Prison records show that appellant maintained positive relationships with staff and other inmates, and that he required very little supervision in his job with the food service department. He successfully completed an Adult Basic Education Program and several Bible study courses. A confirmed rating decision was issued on December 6, 1989. R. at 148.

In September 1990, appellant requested that the RO reopen his claim for an increased rating for PTSD, and asserted that the February 19, 1985, RO decision assigning a 30% rating was "clear and unmistakable error" for failure to award a retroactive benefit from May 9, 1969. R. at 152–53. A confirmed rating decision, dated September 21, 1990, found no clear and unmistakable error in the prior rating decisions. R. at 155.

## II. ANALYSIS

### A. Earlier Effective Date

▮ In its decision, the BVA determined that the February 1985 RO decision assigning an effective date of July 25, 1984, for service-connected PTSD was supported by the evidence of record and was not clearly and unmistakably erroneous. This Court has jurisdiction to review a BVA decision that a prior final RO or BVA decision did not contain "clear and unmistakable error" within the meaning of 38 C.F.R. § 3.105(a) (1992). *See* 38 U.S.C.A. §§ 7252, 7266(a) (West 1991); *Russell v. Principi*, 3 Vet.App. 310, 314–15 (1992) (en banc). Upon review of a BVA decision finding no clear and unmistakable error in a prior adjudication, the Court's standard of review is to determine whether that conclusion was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and whether the Board provided an adequate statement of reasons or bases for its determination. *Russell*, 3 Vet.App. at 315 (quoting 38 U.S.C.A. § 7261(a)(3)(A) (West 1991)); *see* 38 U.S.C.A. § 7104(d)(1) (West 1991); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56–57 (1990). We hold that the BVA's conclusion is not "arbitrary, capricious, [or] an abuse of discretion...." 38 U.S.C.A. § 7261(a)(3)(A).

### B. Increased Rating

■ The level of impairment due to PTSD is determined by the schedule of ratings for mental disorders in 38 C.F.R. § 4.132, diagnostic code (DC) 9411 (1992). According to the rating schedule, a 30% evaluation is warranted when

> *[d]efinite impairment* in the ability to establish or maintain effective and wholesome relationships with people and when psychoneurotic symptoms result in such reductions in initiative, flexibility, efficiency, and reliability levels as to produce *definite industrial impairment.*

38 C.F.R. § 4.132, DC 9411 (emphasis added). A 50% rating is conferred when

> [a]bility to establish or maintain effective or favorable relationships with people is *considerably impaired.* By reason of psychoneurotic symptoms the reliability, flexibility and efficiency levels are so reduced as to result in *considerable industrial impairment.*

*Id.* (emphasis added).

In its decision, the BVA opined that many of appellant's complaints could be associated with his incarceration and concluded that appellant's PTSD "is productive of no more than *definite* social and industrial impairment...." *Eldson J. McGhee,* BVA 90–52132, at 6 (Aug. 15, 1991). Normally, the Court would undertake the task of reviewing the BVA's determination regarding level of disability, by deciding whether it is "clearly erroneous," and affirm the decision if there is a "plausible basis" in the record for the Board's determination. 38 U.S.C.A. § 7261(a)(4) (West 1991); *see Lovelace v. Derwinski,* 1 Vet. App. 73 (1990); *Gilbert,* 1 Vet.App. at 52–53. In this case, however, even if there is a plausible basis in the record to support the BVA's denial of a rating higher than 30% for appellant's PTSD, effective judicial review of the BVA decision is not possible because the Board has failed to construe the term "definite" in section 4.132 so that it can be applied in a quantifiable, objective, manner.

Recently, the Court faced this same problem in *Hood v. Brown,* 4 Vet.App. 301 (1993). *See also Chappell v. Brown,* 4 Vet.App. 384 (1993). In *Hood,* the veteran appealed the Board's denial of his claim for a rating increase to 100% for manic-depressive psychosis, rated as 30% disabling. In its decision, the Board failed to provide reasons or bases to explain its conclusion that appellant's symptomatology reflected "definite" impairment and not "considerable," "severe," or "total" impairment. *Hood,* 4 Vet.App. at 302; *see* 38 C.F.R. § 4.132. The Court held that "the Board is required in its decision to explain the rating criteria used in determining the category into which the veteran's symptoms fall." *Hood,* 4 Vet.App. at 302 (quoting *Shoemaker v. Derwinski,* 3 Vet.App. 248, 253 (1992)); *see* 5 U.S.C.A. § 557 (West 1991); *Int'l Longshoremen's Ass'n v. Nat'l Mediation,* 870 F.2d 733 (D.C.Cir.1989). The Court remanded, in part, for the BVA to "detail how the term 'definite' can be applied in a quantitative manner...." *Hood,* 4 Vet.App. at 304.

In the instant case on appeal, the Board repeats the error committed in *Hood.* In its decision, the Board stated the issue in this case as "whether or not the present evaluation properly represents the current degree of social and industrial impairment." *McGhee,* BVA 90–52132, at 6. After addressing appellant's symptomatology, the Board determined that

> on balance, it is the Board's opinion that the veteran's psychiatric disorder is productive of no more than definite social and industrial impairment, supporting no more than a 30 percent rating.

The Court is unable to determine whether the basis for the Board's decision is plausible, because even though the Board explained the evidentiary basis for its decision, it failed to discuss the veteran's evidence in the context of the criteria listed in the rating schedule. *See* 38 C.F.R. § 4.132, DC 9411. Therefore, this case must be remanded for the Board to explain why appellant's symptoms do not satisfy the criteria for a higher rating. *Hood,* 4 Vet. App. at 302; *see Jones v. Principi,* 3 Vet. App. 396, 400 (1992).

In *Hood* the Court recognized that the nature of the governing regulation might make it difficult for the Board to provide such a statement because the term "definite" is *qualitative* in nature. That is, the term does not describe the degree of impairment as do other *quantitative* terms used as rating descriptions in the rating schedule, such as "total", "severe", "considerable", or "mild"; rather, "definite" merely expresses the fact that an impairment exists. *Hood,* 4 Vet.App. at 303–04. In *Hood,* the Court stated that

> [t]he Board is statutorily mandated to provide a statement of reasons or bases for its decision. If the Board is unable to do so because of a regulation's syntax, then it may be necessary for the Secretary to change that regulation by amendment or interpretation.

4 Vet.App. at 304.

It is not within the purview of jurisdiction of this Court to review the schedule of ratings or to discern the level of disability signified by the terms set forth in the rating schedule. Accordingly, the BVA's decision is VACATED as to the claim for an increased rating and REMANDED so that the BVA may apply the criteria from the rating schedule so as to provide a solid, objective, basis for its determination of the degree of impairment caused by appellant's disability. The BVA's denial of an earlier effective date for appellant's service-connected PTSD is AFFIRMED. Because the deficiencies in the Board's decision and in the syntax of the governing regulation prevent appellate review of the merits of appellant's claim for an increased rating for PTSD, it is not necessary that the Court apply the provisions of 38 C.F.R. § 3.665 (1992) (providing for reductions in compensation due to incarceration).